UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| UNITED STATES OF AMERICA, | Case No. 18-CR-00275-LHK |
|---|---|
| Plaintiff, | **ORDER DENYING COMPASSIONATE RELEASE** |
| v. | Dkt. No. 31 |
| DIEGO ALEJANDRO AGUILAR, | |
| Defendant. | |

Defendant Diego Alejandro Aguilar ("Defendant") is currently in the custody of the Bureau of Prisons ("BOP") and incarcerated at the United States Penitentiary Atwater ("USP Atwater"). Defendant moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), also known as compassionate release. For the reasons set forth below, the Court DENIES Defendant's motion.

**I.   BACKGROUND**

On June 21, 2018, Defendant was charged in an indictment with seven counts of violating 21 U.S.C. § 841(a)(1), possession of methamphetamine with intent to distribute, and one count of violating 18 U.S.C. § 922(a)(1)(A), engaging in the business of selling firearms without a license. ECF No. 11.

On December 12, 2018, Defendant pled guilty to one count of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of engaging in the business of selling firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A). ECF No. 20. In his plea agreement, Defendant admitted that from February 8, 2018 through May 31, 2018, Defendant sold methamphetamine on seven separate occasions and sold firearms on two separate occasions. *Id.* ¶ 2. Specifically, Defendant admitted that he sold a total of 534.2 grams of methamphetamine. *Id*. Defendant also sold a Springfield Armory, XD-9, 9mm pistol with two magazines and a box of Winchester 9mm ammunition containing 156 rounds, and a Ruger .357 New Model Blackhawk revolver with seven rounds of 9mm ammunition, PSR ¶¶ 8, 12.

Defendant's criminal history consisted of two misdemeanor convictions. PSR ¶¶ 45-46. In 2012, at age 18, Defendant was convicted of disturbing the peace for running away from police officers when he was in possession of 3.2 grams of marijuana. PSR ¶ 45. Defendant was sentenced to probation and 10 days jail. *Id*. In 2012, at age 19, Defendant was convicted of driving with a suspended license, for which Defendant was sentenced to probation. PSR ¶ 46.

Defendant's sentencing guideline range was 121-151 months. PSR Sentencing Recommendation. The government recommended a sentence of 121 months, the low end of the guideline range. ECF No. 25. The United States Probation Office recommended a downward variance to a sentence of 96 months. PSR Sentencing Recommendation at 20, ECF No. 24. Defendant requested the statutory mandatory minimum sentence of 60 months. ECF No. 26. The Court granted a downward departure and a downward variance to 70 months. ECF No. 28. The Court ordered Defendant to self-surrender on June 12, 2019. ECF No. 28.

Defendant has served 16 months or 22% of his 70 month sentence. Defendant's conduct in prison thus far qualifies him for good time credits. If Defendant qualifies for good time credits throughout his period of incarceration, Defendant will serve only 85% of his 70 month sentence and thus his projected release date with good time credits would be May 25, 2024. ECF No. 34. Based on a May 25, 2024 projected release date, Defendant has served 26% of his sentence. ECF

No. 34 at 17.

## II.     LEGAL STANDARD

18 U.S.C. § 3582(c) allows a court to modify a defendant's "term of imprisonment . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

"[A]fter considering the factors set forth in § 3553(a) to the extent applicable," a court may grant the motion to reduce the defendant's sentence in two circumstances. As relevant here, a court may reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). The relevant Sentencing Commission policy statement enumerates several "extraordinary and compelling reasons." U.S. Sentencing Guidelines ("U.S.S.G") § 1B1.13(1)(A) & cmt. 1. A defendant fulfills one of the enumerated reasons when the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. § 1B1.13 cmt. 1(A)(ii). The Commission also requires that the defendant not pose a danger to the safety of the community. *Id*. § 1B1.13(2).

## III.    DISCUSSION

In analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), courts determine whether a defendant has satisfied three requirements. First, a defendant must exhaust his administrative remedies. Second, a defendant must establish that the § 3553(a) sentencing factors "are consistent with" granting a motion for compassionate release. *United States v. Trent*, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020). Third, a defendant must demonstrate that "extraordinary and compelling reasons"—as defined by the applicable

3

Case No. 18-CR-00275-LHK
ORDER DENYING COMPASSIONATE RELEASE

Sentencing Commission policy statement—"warrant . . . a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

As to the first requirement, the government concedes that Defendant has exhausted his administrative remedies. ECF No. 34 at 4.

As to the second requirement, the § 3553(a) sentencing factors, the Court observes that Defendant has served 22% of his sentence. Defendant's sentence was imposed to, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Defendant sold 534.2 grams of methamphetamine and two firearms without a license to sell firearms. Reducing Defendant's sentence by nearly 80% by granting Defendant compassionate release would greatly undermine the above statutory purposes of sentencing.

Similarly, United States District Judge Jon Tigar of the Northern District of California concluded that permitting compassionate release for a defendant who "has served only roughly 20 percent of his sentence . . . would not satisfy the need for the sentence imposed . . . to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense. Nor would it afford adequate deterrence to criminal conduct or adequately protect the public from further crimes of the defendant." *United States v. Furaha*, --- F. Supp. 3d ---, 2020 WL 2315640, at *4 (N.D. Cal. May 8, 2020).

Moreover, United States District Judge Richard Seeborg of the Northern District of California has held that, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis," with a longer remaining sentence weighing against granting any such motion. *See United States v. Connell*, --- F. Supp. 3d ---, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).

As to the third requirement, Defendant fails to demonstrate extraordinary and compelling reasons warranting a sentence reduction. In Defendant's motion for compassionate release, which

4

Case No. 18-CR-00275-LHK
ORDER DENYING COMPASSIONATE RELEASE

was received and filed by the Court on September 28, 2020, Defendant states that Defendant's Body Mass Index ("BMI") is 39.  ECF No. 31.  Defendant notes that the CDC warns that individuals with a BMI of 30 or higher are clinically classified as "obese" and have an increased risk of suffering severe illness from COVID-19.  *Id*.  Defendant also notes that he suffers from anxiety and takes medication for the anxiety.  *Id*.

Defendant's April 3, 2019 Presentence Report ("PSR") stated: "The 25-year-old defendant stands six feet two inches tall and weighs 300 pounds."  PSR ¶ 59.  Thus, at the time of the PSR, Defendant's Body Mass Index ("BMI") was 38.51.  The PSR also stated: "Aguilar stated he is in good physical health and does not take any medications."  PSR ¶ 60.

As to his mental health, the PSR stated that Defendant reported that he suffered a panic attack in high school because he was not doing well in school and was told by teachers that he would "not go far in life."  PSR ¶ 61.  Defendant also reported that he had not suffered any panic attacks since high school and that his anxiety improved once he got a job.  *Id*.  However, his arrest in this case and having to go to prison caused his anxiety to return.  PSR ¶ 62.  Defendant stated that he has never been medicated for his anxiety.  *Id*.

Defendant is now 27 years old.  ECF No. 34.  Defendant's age does not place him in a high risk age group for severe COVID-19 illness, and Defendant does not contend otherwise.  ECF No. 31.  In fact, the Centers for Disease Control state that risk of getting severely ill from COVID-19 increases with age: "For example, people in their 50s are at higher risk for severe illness than people in their 40s.  Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s.  The greatest risk for severe illness from COVID-19 is among those aged 85 or older."  *Coronavirus Disease 2019 (COVID-19): Older Adults* (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.  "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older."  *Id*. (emphasis omitted).

In opposition to the instant motion, the government filed Defendant's Bureau of Prisons medical records.  ECF No. 37.  Defendant's Bureau of Prisons medical records show that on

September 28, 2020, the date the instant motion was filed, Defendant saw a doctor to follow up with Defendant's anxiety disorder and to refill Defendant's anxiety medication. *Id*. at 2-3.[1] On September 28, 2020, Defendant was 74 inches or 6 feet and almost 2 inches tall and weighed 292 pounds. *Id*. at 2. Thus, on the date the instant motion was filed, Defendant's BMI was 37.49. However, the Bureau of Prisons doctor notes that "Patient ahs [sic] been dieting and exercising and lost 15 lbs. over the past 4 months." *Id*. Thus, four months ago, if Defendant weighed 307 pounds, his BMI would have been 39.4.

The government concedes that a combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason to grant compassionate release. ECF No. 34 at 8. However, the government contends that Defendant's obesity does not constitute an extraordinary and compelling reason warranting compassionate release. *Id*. at 9.

The Court agrees and notes that other courts have declined to grant compassionate release to otherwise healthy and young inmates with obesity as their only cognizable risk factor, absent other indications of serious medical risk. *See, e.g.*, *United States v. German*, 2020 WL 5849530, at *2-3 (D.N.H. Oct. 1, 2020) (denying compassionate release to 30 year old with BMI of 36); *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to 34 year old with BMI of 31.8).

Moreover, other courts have declined to release inmates with obesity and other health conditions. *See, e.g.*, *United States v. Tranter*, 2020 WL 3841268, at *2-5 (N.D. Ind. July 8, 2020)(denying compassionate release to 36 year old former smoker with BMI of 33.1); *United States v. Price*, 2020 WL 5440164, at *3-5 (E.D. Mich. Sept. 10, 2020) (denying compassionate release to 31 year old with asthma and BMI of 31.6); *United States v. Pride*, 2020 WL 3971652 (D. Colo. July 14, 2020) (denying compassionate release to 37 year old with hypertension and

---

[1] Defendant's medical records themselves are not consecutively paginated. Thus, the page number references to Defendant's medical records herein refer to the ECF stamped page numbers at the top of each page.

6

Case No. 18-CR-00275-LHK
ORDER DENYING COMPASSIONATE RELEASE

BMI of 40.4); *United States v. Abalos*, 2020 WL 5167537 (D. Haw. Aug. 31, 2020) (denying compassionate release to 41 year old with hypertension and BMI of 31); *United States v. Hayes*, 2020 WL 3611485, at *2-3 (M.D. Fla. July 2, 2020) (denying compassionate release to defendant with high blood pressure and a BMI greater than 40, but not identifying defendant's age); *United States v. Peaks*, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (denying compassionate release to 31 year old with hypertension and BMI "a little over 44"); *United States v. Smith*, 2020 WL 4791226 (E.D. Mich. Aug. 18, 2020) (denying compassionate release to 30 year old with asthma and BMI of 30.7); *United States v. Myers*, 2020 WL 4934343 (E.D. Mich. Aug. 24, 2020) (denying compassionate release to 40 year old with high blood pressure and BMI of 31.5).

This Court has found only one case where compassionate release was granted for obesity alone. That case is distinguishable. In *United States v. Campanella*, 2020 WL 4754041, at *1 (D. Colo. Aug. 17, 2020), Campanella's BMI was 45.52. The Centers for Disease Control defines "severely obese" as having a BMI of 40 or above. *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions* (Oct. 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity. Thus, Campanella was severely obese. *Id*. at *1. Campanella pled guilty to one count of conspiracy to distribute or possess with intent to distribute cocaine. *Id*. At the time of sentencing, Campanella's sentencing guideline range was 46 to 57 months. *Id*. at *3-4. The *Campanella* Court departed downward by 12 months and imposed a 34 month sentence. *Id*. at *4. Campanella had 16 months left before her projected release date. *Id*. at *1. Moreover, at Campanella's place of incarceration, FMC Carswell, five hundred and twenty-nine inmates and one staff member had recovered from COVID-19, and four inmates had died from COVID-19. *Id*. The *Campanella* Court found that the Bureau of Prisons COVID-19 precautions "have not worked as well at FMC Carswell." *Id*. at *3.

By contrast, in the instant case, Defendant is not severely obese. Defendant's BMI is 37.5 as opposed to Campanella's 45.52. Defendant pled guilty to possession of methamphetamine with intent to distribute and selling firearms without a license to sell firearms. ECF No. 20. In his plea

7

1  agreement, Defendant admitted that he sold a total of 534.2 grams of methamphetamine.  *Id*.
2  Defendant also sold a Springfield Armory, XD-9, 9mm pistol with two magazines and a box of
3  Winchester 9mm ammunition containing 156 rounds, and a Ruger .357 New Model Blackhawk
4  revolver with seven rounds of 9mm ammunition.  PSR ¶¶ 8, 12.  Defendant's sentencing guideline
5  range was 121 to 151 months as opposed to Campanella's 46 to 57 months.  The instant Court
6  departed and varied downward 51 months and imposed a sentence of 70 months as opposed to
7  Campanella's 12 month downward departure to 34 months.  Assuming Defendant qualifies for
8  good time credits, Defendant's projected release date is May 25, 2024, so Defendant has nearly 44
9  months yet to serve as opposed to Campanella's 16 months.  Moreover, as of October 14, 2020,
10 only three inmates and five staff have recovered from COVID-19 at USP Atwater unlike the five
11 hundred and twenty-nine inmates and one staff at FMC Carswell.  *See Atwater USP*, row in table
12 of *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited
13 Oct. 15, 2020).  Moreover, no inmates have died from COVID-19 at USP Atwater as opposed to
14 the four inmates who died from COVID-19 at FMC Carswell.  *Id.*

15   Moreover, the county to which Defendant would be released, Monterey County, is a
16 COVID-19 hotspot.  California's Department of Public Health has designated Monterey County as
17 being at the highest COVID-19 risk level: "Widespread."  *See Monterey*, county status in
18 *Blueprint for a Safer Economy*, https://covid19.ca.gov/safer-economy/ (last visited Oct. 15, 2020).
19 As of October 13, 2020, on a trailing seven-day average, Monterey County has 8.5 new cases
20 daily per 100,000 residents and 4.7 percent of COVID-19 tests in the county are positive.  *Id*.  The
21 government's October 11, 2020 opposition notes that as of October 11, Monterey County has
22 10,587 positive cases of COVID-19 and 78 COVID-19 deaths.  ECF No. 34 at 18.

23   The *Campanella* Court cites *United States v. Hayes*, 2020 WL 4001903, at *3 (E.D. Mich.
24 July 15, 2020), for the proposition that "obesity alone qualifies as a recognized risk factor" and
25 granting compassionate release.  2020 WL 4754041 at *3.  However, *Hayes* is distinguishable.
26 Hayes was "morbidly obese" and had a BMI of 59.3, "which is nearly double the threshold BMI
27 of 30 recognized by the CDC as increasing risk for coronavirus complications."  *Hayes*, 2020 WL

28

United States District Court
Northern District of California

4001903 at *2. Hayes had also suffered from asthma since he was two years old and was prescribed two different inhalers. *Id*. Hayes further suffered from sleep apnea. *Id*.

In addition, the Court is aware of one instance in this district where a United States Magistrate Judge released a pre-trial detainee for obesity in light of the COVID-19 pandemic. *United States v. Daniels*, No. 19-CR-00709, 2020 WL 1815342 (N.D. Cal. Apr. 9, 2020), ECF No. 24. The defendant in that case was 37 years old and had a BMI of 38.38. *See* Detention Order, *Daniels*, No. 19-CR-00709 (N.D. Cal. Sept. 28, 2020), ECF No. 50. After release, that defendant allegedly committed domestic violence against his custodian, who herself had underlying medical conditions that put her at risk for severe COVID-19 illness; violated his parole; was a fugitive for more than one month; and at the time of his apprehension, which defendant allegedly resisted, defendant allegedly possessed methamphetamine, for which a potential state narcotics charge remains pending. *Id*. *Daniels* thus does not counsel in favor of compassionate release in the instant case.

Finally, the government notes that as of 2017-2018, 42.4% of American adults are obese. ECF No. 34 at 10; Craig M. Hales et al., *Prevalence of Obesity and Severe Obesity Among Adults: United States, 2017-2018,* Centers for Disease Control and Prevention (Feb. 2020), https://www.cdc.gov/nchs/products/databriefs/db360.htm. Noting this statistic, the court in *United States v. Hayes*, 2020 WL 3611485 at *2-3 (M.D. FL. Jul. 2, 2020), stated: "Assuming federal prisoners experience these conditions at about the same rate as the general population, if either one qualified as an extraordinary and compelling reason, roughly half the prison population would be eligible for compassionate release."

The government also notes that in 2015, the Bureau of Justice Statistics reported that in 2011-2012, 74% of prisoners and 62% of jail inmates were overweight, obese, or morbidly obese. ECF No. 34 at 10; U.S. Dep't of Justice, *Medical Problems of State and Federal Prisoners and Jail Inmates*, 2011-12 (Oct. 4, 2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf. United States District Judge Jed Rakoff in the Southern District of New York has noted that granting compassionate release based on age alone would warrant widespread compassionate

release, which would undermine the limited scope of compassionate release. Specifically, in *United States v. Haney*, --- F. Supp. 3d ---, 2020 WL 1821988, at *5 (S.D.N.Y. Apr. 13, 2020), Judge Rakoff denied compassionate release to a 61 year old defendant in reasonably good health because if age alone was sufficient to grant compassionate release, "it follows that every federal inmate in the country above the age of 60 should be forthwith released from detention, a result that does not remotely comply with the limited scope of compassionate release."

This Court need not reach the issue of whether obesity alone would or would not warrant compassionate release. The Court only decides the instant case. Here, Defendant is a 27 year old otherwise healthy individual who committed the serious offenses of selling methamphetamine and firearms and has only served 22% of his 70 month sentence, which already includes a 51 month downward departure and downward variance. The Court finds that in this case Defendant has failed to demonstrate extraordinary and compelling reasons justifying a further sentence reduction and compassionate release.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion for compassionate release.

**IT IS SO ORDERED.**

Dated: October 15, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge